UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADAM GRABHORN,

Plaintiff,

-v-

CITY OF NEW YORK, et al.,

Defendants.

---

25-CV-00106 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Adam Grabhorn ("Plaintiff") brings this suit against his former employer the New York Police Department (the "NYPD"), the City of New York (the "City"), former NYPD Deputy Commissioner of Equity and Inclusion Tanya Meisenholder ("Meisenholder"), former New York City senior health advisor Jay Varma ("Varma"), and former New York City Mayors Bill de Blasio ("de Blasio") and Eric Adams ("Adams") (collectively "Defendants"). Plaintiff asserts sixteen causes of action against Defendants, alleging civil rights violations pursuant to 42 U.S.C. 1983 ("Section 1983"), the New York State Constitution, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). ECF No. 1 ("Complaint" or "Compl."). Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. ECF No. 20. For the following reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The following background is derived from Plaintiff's Complaint. The allegations are accepted as true and construed in the light most favorable to Plaintiff.

Plaintiff began his employment with the NYPD on January 7, 2008. Compl., ¶ 15. He is a devout Christian and disclosed to Defendants that he was a person of faith. *Id.*, ¶¶ 16-18. His religious beliefs do not allow him to be vaccinated. *Id.*, ¶ 19.

On October 20, 2021, the New York City Department of Health and Mental Hygiene Commissioner issued an order ("Vaccine Mandate") requiring City employees, including NYPD employees, to receive the COVID-19 vaccination on or before Friday, October 29, 2021. *Id.*, ¶ 24. The Vaccine Mandate also provided that any City employee who did not provide proof of vaccination would be excluded from their workplace premises beginning on November 1, 2021. *Id.*, ¶ 25.

The Vaccine Mandate did, however, permit City employees to submit a written request for exemption from vaccination on medical or religious grounds via an accommodation form. *Id.*, ¶¶ 26, 30. Plaintiff submitted his request for accommodation on October 21, 2021, to the NYPD Office of Equal Employment Opportunity, a sub-unit of the Office of Equity and Inclusion headed by Meisenholder. *Id.*, ¶¶ 28-30.

The form asked Plaintiff to identify the basis of his reasonable accommodation request and to describe his religious beliefs and practices. *Id.*, ¶ 32.

Plaintiff asked for a religious accommodation, stating that his religious belief "is that of the Christian faith based on the holy bible." *Id.*, ¶ 33. Quoting from the Bible, he explained that "as a [C]hristian [he] ha[s] the responsibility to keep [his] bod[y] sacred from all outside influ[e]nce . . . including that of . . . vaccines, or anything that keeps the body from being unholy an[d] . . . pure." *Id.*, ¶ 35.

Plaintiff elaborated that "as someone who believes that what the scriptures say is infall[i]ble . . . [he is] commanded by [his] savior Jesus to ask for what [he] need[s] and it will be given," which "includes the healing of one['s] . . . body provided by nature and that of prayer." *Id.*, ¶ 38. "Taking the covid 19 vaccine or being mandated or f[or]ced . . . to take any other, would violate the belief [he has] in defiling [his] body." *Id.*

Plaintiff was permitted to continue working after he submitted his accommodation request, complying with Defendants' mask and testing protocol. *Id.*, ¶ 39. In or around late 2021, his accommodation request was denied. *Id.*, ¶ 40. Defendants failed to analyze or engage in a cooperative dialogue with Plaintiff regarding his religious accommodation requests. *Id.*, ¶ 41. The denial notification did not offer reasoning but rather simply had a checked box for "Does Not Meet Criteria." *Id.*, ¶ 44. The denial falsely indicated that Plaintiff had failed to show a history of prior vaccine exemptions based on religion, even though he had a Hepatitis B vaccine exemption. *Id.*, ¶ 44.

The Complaint, on information and belief, accuses Meisenholder of enacting a discriminatory policy of denying religious accommodation requests by City

employees. *Id.*, ¶¶ 42, 59. The Complaint alleges that Meisenholder made public statements during a podcast about "knuckle draggers" within the NYPD, using that as a derogatory term towards male police officers of faith. *Id.*, ¶ 43.

Plaintiff timely appealed the denial of his accommodation request in late 2021 or early 2022. *Id.*, ¶ 50. He was permitted to continue working during the appeal process and complied with Defendants' mask and testing protocol. *Id.*, ¶ 51. During the pendency of his appeal, Plaintiff was alerted by representatives of his union and police benevolent association that "Defendants would not be granting religious exemptions[,] that the appeal would be denied, and that early retirement was possible." *Id.*, ¶ 52.

Claiming that he was pressured by the NYPD, and understanding that his accommodation request would not be granted, Plaintiff submitted his retirement paperwork on June 3, 2022, in order to preserve his retirement benefits and to use his accrued leave. *Id.*, ¶ 53. Plaintiff claims that if he were placed on leave without pay ("LWOP") pursuant to the Vaccine Mandate, he would not be entitled to retirement or to use his accruals. *Id.* He then began using his accruals. *Id.*, ¶ 54.

On July 14, 2022, Plaintiff received notice that his appeal was denied. *Id.*, ¶ 55. The email informed him that he would be placed on LWOP on July 20, 2022, and that if he failed to submit proof of vaccination by July 22, 2022, his employment would be terminated. *Id.* The following day, on July 15, 2022, Plaintiff was alerted that he could "disregard the notice and deadlines" from the previous email, as he was already running his time to vested separation. *Id.*, ¶ 56. Plaintiff did not

receive the COVID-19 vaccine due to his religious beliefs. *Id.*, ¶ 61. His last day of employment with the NYPD was September 15, 2022. *Id.*

Plaintiff claims that the Vaccine Mandate forced him to retire or go against his religious beliefs, resulting in his forced separation from the NYPD. *Id.*, ¶ 57. This municipal policy, Plaintiff alleges, was "enacted and enforced by final decision makers such as" Defendants Adams, De Blasio, Meisenholder, and Varma. *Id.*, ¶ 58.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"

*Jennings v. Hunt Companies*, Inc., 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

### A. The NYPD is Dismissed as a Party

The NYPD is not a suable entity. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396. "The Second Circuit has construed this section 'to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued.'" *Annicelli v. New York City Police Department*, No. 25-CV-02424 (RMB) (KHP), 2026 WL 871393 at *5 (S.D.N.Y. Jan. 9, 2026) (quoting *Ximines v. George Wingate High School*, 516 F.3d 156, 160 (2d Cir. 2008)), *report and recommendation adopted*, 2026 WL 867926 (S.D.N.Y. Mar. 30, 2026). Accordingly, all claims against the NYPD are dismissed.

### B. Section 1983

Plaintiff brings Section 1983 claims against the City and all individual Defendants for violations of the Free Exercise and Equal Protection Clauses of the Constitution and for retaliation under the First Amendment. Section 1983 provides a "civil cause of action against a party 'who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,]'" deprives another of rights secured by

the United States Constitution or federal law. *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 407 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) (quoting 42 U.S.C. § 1983). Section 1983 requires that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

An individual may not be held liable under Section 1983 absent personal involvement in the alleged constitutional deprivation. *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). To establish a "supervisor or high official's 'personal involvement' in a constitutional violation," *Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 676 (E.D.N.Y. 2005), a plaintiff must demonstrate any of the following:

> (1) direct participation in the alleged violation, (2) failure to remedy the violation after being informed of it, (3) creation or tolerance of a policy or custom under which the violation occurred, (4) gross negligence in supervising subordinates who committed the violation, or (5) failure to act on information indicating that the violation was occurring."

*Id.* Similarly, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To hold a municipality liable under Section 1983 for a constitutional violation committed by one of its employees, the "deprivation of the plaintiff's rights

under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Thus, *Monell* liability requires both that an employee was acting under color of law when committing the constitutional violation *and* that a plaintiff's constitutional rights were deprived as the result of an "official policy or custom of the City." *Albert v. City of New York*, No. 17-CV-03957 (ARR) (SMG), 17-CV-04315 (ARR) (SMG), 2018 WL 5084824, at *4 (E.D.N.Y. Oct. 18, 2018) (quoting *Stoeckley v. City of New York*, 700 F. Supp. 2d 489, 494 (S.D.N.Y. 2010)).

In this case, because Plaintiff has not adequately alleged an underlying constitutional violation committed by a state actor, the Court need not address whether he has pleaded sufficient facts to establish personal involvement of the individual Defendants or a municipal policy and practice on a *Monell* liability claim. *See Albert*, 2018 WL 5084824, at *5.

**1. Free Exercise Clause**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "This guarantee is incorporated against the states via the Fourteenth Amendment." *New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 330 (2d Cir. 2025) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)). "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Id.* (quoting *Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 877 (1990)). "The

Free Exercise Clause thus protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Kane v. de Blasio*, 19 F.4th 152, 163-164 (2021) (quoting *Smith*, 494 U.S. at 877). "This protection, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'" *Id.* at 164 (quoting *Smith*, 494 U.S. at 879). "Neutral and generally applicable laws are subject only to rational-basis review." *Id.*

The Second Circuit first addressed a facial challenge of a similar vaccine mandate in *Kane*. Plaintiffs in that case "were denied[] religious accommodation," and sought preliminary injunctive relief "enjoining the City from terminating [them] . . . while they [we]re afforded the opportunity to have their religious accommodation requests reconsidered." *Kane*, 19 F.4th at 158, 162-163. That mandate required those who work in Department of Education ("DOE") schools or buildings be vaccinated against the COVID-19 virus. *Id.* at 159. Employees seeking religious exemption had to submit a request "documented in writing by a religious official." *Id.* at 160. Like the accommodation process in the instant case, DOE "establishe[d] a two-step process for resolving a request for a religious accommodation. *Id.* Employees seeking religious accommodation first submitted a request for "initial determination of eligibility for an exemption or accommodation," and if that request was denied, could "appeal the DOE's determination to a panel of arbitrators." *Id.*

The Second Circuit held that the DOE mandate was neutral and did "not

discriminate on its face" because it required "'all DOE staff,' as well as City employees and contractors of DOE and the City who work in DOE school settings" to be vaccinated, and thus did "not single out employees who decline vaccination on religious grounds." *Id.* at 164. The mandate was generally applicable as the plaintiffs made no "showing that the exemption procedures allow[ed] secularly motivated conduct to be favored over religiously motivated conduct." *Id.* at 165. That is, the mandate "provide[d] for objectively defined categories of exemptions . . . that do not invite the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 166 (cleaned up). Finally, the Department of Education's mandate "plainly satisfie[d]" the rational review standard because "[a]ttempting to safely reopen schools amid a pandemic . . . in accordance with CDC guidance" by requiring vaccination for all staff "as an emergency measure . . . was a reasonable exercise of the State's power to act to protect the public health." *Id.*

The *Kane* decision was followed four years later by the Second Circuit's decision in *New Yorkers for Religious Liberty, Inc.* That case, involving the same DOE mandate, reaffirmed that the "[m]andate, in all its iterations, was neutral, generally applicable, and facially constitutional under the Free Exercise Clause." 125 F.4th at 330 (cleaned up); *see also Annicelli*, 2026 WL 871393, at *7 (clarifying that, although plaintiff did not raise a facial challenge to the NYPD's Vaccine Mandate, "the Second Circuit already rejected facial challenges to the Vaccine Mandate in *Kane* and *New Yorkers for Religious Liberty*[.]").

Plaintiff's facial challenge to the NYPD Vaccine Mandate, which is in all substantive respects identical to the DOE policy, fails for the same reasons as the DOE mandate. The Vaccine Mandate applies to all employees. Compl., ¶ 24. As in *Kane*, "the [Vaccine] Mandate does not single out employees who decline vaccination on religious grounds," and "its restrictions apply equally to those who choose to remain unvaccinated for any reason." *Kane*, 19 F.4th at 164. It is thus neutral on its face. *Id.*

The Vaccine Mandate is also generally applicable. A law may not be generally applicable "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 165 (quoting *Fulton v. City of Phila., Pa.*, 593 U.S. 522, 533 (2021)). Plaintiff argues that the Vaccine Mandate favored individuals with requests for medical accommodations while failing to provide for religious accommodation. Compl., ¶¶ 68, 89.

There is no allegation that the Vaccine Mandate made such a distinction on its face. As discussed above, the Vaccine Mandate did have a procedure for requesting religious accommodations, which Plaintiff admits he availed himself of. Rather, Plaintiff appears to be alleging that Defendants had a *de facto* policy or practice of favoring medical accommodation requests over religious accommodations. Specifically, the Amended Complaint alleges that "[Defendants] permitted medical accommodations to the COVID-19 vaccine and . . . engaged in the

cooperative dialogue and interactive process with employees seeking medical accommodation but not for Plaintiff or other employees seeking religious accommodation." *Id.*, ¶ 68. Yet this statement is entirely conclusory. Plaintiff fails to plead any specific facts from which an inference could plausibly be drawn that such a *de facto* policy or practice exists. *See Lopes v. City of New York*, No. 22-CV-08271 (LTS), 2024 WL 3952596, at *3 (S.D.N.Y. 2024) (dismissing Free Exercise challenge to Vaccine Mandate where Plaintiff failed to identify any individuals who were provided accommodations).

Because the Court finds that the Vaccine Mandate was neutral and generally applicable, "rational basis review applies." *Kane*, 19 F.4th at 166. This standard "requires the City to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal." *Id.* The Court follows the Second Circuit's holdings that the substantively similar mandate in *Kane* and *New Yorkers for Religious Liberty, Inc.* "plainly satisfies this standard" and "was a reasonable exercise of the State's power to act to protect the public health." *Id.*

**2. Equal Protection Clause**

To maintain an equal protection claim, Plaintiff must show "adverse treatment of individuals compared with other similarly situated individuals [and that] such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 474 (2d Cir. 2008).

Plaintiff fails to suggest any specific "adverse treatment" of individuals seeking religious exemptions to the Vaccine Mandate in comparison to individuals seeking medical exemptions. Plaintiff only makes the conclusory statement that Defendants "did not provide religious accommodation exemptions to Plaintiff and other similarly situated employees but granted medical accommodation requests" without providing an example of any similarly situated employee or employee receiving a medical exemption. Compl., ¶ 93; *accord id.*, ¶ 68. "[C]ourts in this Circuit have rejected equal protection claims based on differential treatment in application of a vaccine mandate based on religion where, as here, the plaintiff failed to identify similarly situated individuals treated differently." *Mumin v. City of New York*, 760 F. Supp. 3d 28, 63 (S.D.N.Y. 2024).

Plaintiff's Equal Protection claim mirrors his Free Exercise claim. "When a free exercise challenge fails," as Plaintiff's does here, "any equal protection claims brought on the same grounds are subject only to rational-basis review." *Kane*, 19 F.4th at 167 n.14. Thus, Plaintiff's "Equal Protection Clause challenge to the [Vaccine] Mandate fares no better than [his] [Free Exercise claim]." *Id.*

**3. First Amendment Retaliation**

To maintain a First Amendment retaliation claim, Plaintiff must show that "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d

Cir. 2003) (cleaned up). Speech on a matter of public concern "includes speech 'relating to any matter of political, social, or other concern to the community.'" *Nagle v. Marron*, 663 F.3d 100, 106 (2d Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

To determine whether speech is on a matter of public concern, the court must "examine the content, form, and context of that speech, as revealed by the whole record." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (cleaned up). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Id.* "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," the Supreme Court has determined that "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147).

Plaintiff claims that he "engaged in protected activities when he requested religious . . . accommodation" and "appealed . . . Defendants' denial of his religious . . . accommodation" to the Vaccine Mandate. Compl., ¶¶ 120-121. Yet the contents of his request for accommodation "speak upon matters only of personal interest" as opposed to "upon matters of public concern." *Connick*, 461 U.S. at 147. In his written request for accommodation, Plaintiff stated that "[a]s a [C]hristian [he] ha[s] the responsibility to keep [his] bod[y] sacred from all outside influ[e]nce . . .

including that of . . . vaccines," and that "[t]aking the covid 19 vaccine . . . would violate the belief [he] ha[s] in defiling [his] body." Compl., ¶¶ 35, 38. Nowhere in his request for accommodation does Plaintiff express "any matter of political, social, or other concern to the community." *Nagle*, 663 F.3d at 106 (quoting *Connick*, 461 U.S. at 146).

Plaintiff's claim fails for the additional reason that Plaintiff does not plausibly allege a causal connection between his accommodation request and his resignation. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Mandell*, 316 F.3d at 383. There is nothing in the Complaint to suggest that Plaintiff was subject to retaliation for filing an accommodation request. Rather, the Complaint is clear that Plaintiff resigned because of the Vaccine Mandate's requirement that any City employee who did not provide proof of vaccination would be excluded from their workplace. Compl., ¶ 25. The First Amendment retaliation claim is therefore dismissed.

**C. State Civil Rights Claims**

Plaintiff's state claims against Defendants include violations under the New York State Constitution, the NYSHRL and the NYCHRL. Plaintiff fails to state a claim for a private cause of action under the state Constitution. Additionally, the Court grants the motion to dismiss the majority of the claims asserted under the

NYSHRL and NYCHRL. Plaintiff's claims against the City of New York and Meisenholder for a failure to accommodate survive, however.

**1. State Constitution**

In their motion to dismiss, Defendants urge dismissal of Plaintiff's Equal Protection and Due Process claims brought under the New York State Constitution. ECF No. 22 ("Mem.") at 14-15. Plaintiff fails to address the arguments regarding the dismissal of Due Process claim in his opposition. *See generally* ECF No. 28 ("Opp'n"). Courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018). Accordingly, the Court grants the unopposed motion to dismiss the Due Process claim.

Article I, Section 11 of the New York State Constitution provides that:

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of . . . religion . . . be subjected to any discrimination in their civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

N.Y. Const. art. I., § 11(a). Section 11 contains two separate provisions. The first sentence contains an Equal Protection Clause that "mirrors" the Equal Protection Clause contained in the Fourteenth Amendment of the federal Constitution. *Hayut v. State Univ. of New York*, 352 F.3d 733, 754 (2d Cir. 2003). The second sentence, the Civil Rights Clause, "bars discrimination in the exercise of civil rights." *Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 245 (S.D.N.Y. 2005). "The term 'civil

rights' was understood by the delegates at the 1938 Constitutional Convention to mean 'those rights which appertain to a person by virtue of his citizenship in a state or community.'" *People v. Kern*, 75 N.Y.2d 638, 651 (1990) (citation omitted).

"A civil damage remedy cannot be implied for a violation of the State constitutional provision unless the provision is self-executing, that is, it takes effect immediately, without the necessity for supplementary or enabling legislation." *Brown v. State*, 674 N.E.2d 1129, 1137 (1996). The first sentence of Section 11, the Equal Protection Clause, is self-executing. *Id.* at 1138. But the state Equal Protection Clause mirrors the Equal Protection Clause contained in the Fourteenth Amendment of the federal Constitution. *Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, 802 F. Supp. 3d 483, 540 (S.D.N.Y. 2025). Thus, Plaintiff's state Equal Protection claim suffers the same fate as his parallel federal claim. *Id.*

Defendants point out, Mem. at 14, that the Civil Rights Clause contained in sentence two "is not self-executing, . . . and prohibits discrimination only as to civil rights which are 'elsewhere declared' by Constitution, statute, or common law." *Kern*, 75 N.Y.2d at 651. Yet notably Defendants do not go so far to claim that the right to be free from religious discrimination in employment is not "elsewhere declared." Nor could they. Section Three of Article I of the New York Constitution guarantees the right to free exercise of religion: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind . . . ." And the New York State Human

Rights Law prohibits employment discrimination based upon "creed," N.Y. Exec. Law § 296(1)(a), and "religion," *id.* § 296(10)(a).

Yet New York only permits a private cause of action for violations of the Civil Rights Clause "where the plaintiffs have no alternative remedies that would protect their interests." *Imperator v. Otsego Cty. Sheriff's Dep't*, No. 13-CV-01594 (BKS) (DEP), 2016 WL 1466545, et *31 (N.D.N.Y. Apr. 14, 2016) (quoting *Vilkhu v. City of New York*, No. 06-CV-02095 (CPS) (JO), 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008); *see also Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (summary order) ("The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983."); *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) ("New York courts have held that a private right of action for violations of the state constitution is unavailable if an alternative remedy is available elsewhere, such as under state tort law or through a New York Civil Practice Law and Rules Article 78 action."). As Plaintiff can pursue claims for religious discrimination in employment under the NYSHRL and NYCHRL, he cannot pursue a private cause of action under the New York Constitution. *Currid v. City of New York*, 241 N.Y.S.3d 341, 345 (2d Dep't 2025), *appeal dismissed, leave to appeal denied*, 45 N.Y.3d 950 (2026).

**2. NYSHRL and NYCHRL Claims**

Plaintiff brings claims of discrimination, failure to accommodate, and retaliation under both the NYSHRL and the NYCHRL. Plaintiff additionally brings a hostile work environment claim under NYSHRL and an interference claim and a

failure to engage in cooperative dialogue claim under the NYCHRL. Finally, Plaintiff seeks to hold the Individual Defendants liable for aiding and abetting a violation of the NYSHRL and NYCHRL. The Court considers each claim in turn.

**a. Disparate Treatment Claims**

The NYSHRL makes it unlawful "[f]or an employer . . . because of an individual's . . . creed . . . to discriminate against such individual . . . in terms, conditions, or privileges of employment." N.Y. Exec. L. § 296(1)(a). Such discrimination includes "impos[ing] upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion." *Id.* § 296(10)(a).

The NYCHRL similarly prohibits an employer from imposing "upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion." N.Y.C. Admin. Code § 8-107(3)(a).

To maintain a disparate treatment claim for religious discrimination under both the NYSHRL and NYCHRL, plaintiff must allege that he experienced differential treatment—that is, he was treated less well—because of his religion. *See, e.g.*, *De Souza v. New York*, 824 F. Supp. 3d 336, 374 (S.D.N.Y. 2026); *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234 (S.D.N.Y. 2021). Religion must be "one of the motivating factors, even if it was not the sole motivating factor" for the adverse employment decision. *Watson v. Emblem Health Serv.*, 69 N.Y.S.3d 595, 598 (1st Dep't 2018). Accordingly, to state a claim, Plaintiff must sufficiently

allege that the conduct was caused, at least in part, by a discriminatory motive. *See Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Ayers v. Bloomberg, L.P.*, 165 N.Y.S.3d 554, 557 (2d Dep't 2022) (a plaintiff must "allege circumstances giving rise to an inference of discrimination based on her sex").

Plaintiff's conclusory assertions fail to state a cause of action for disparate treatment. *See, e.g.*, *Currid*, 241 N.Y.S. 3d at 345. Plaintiff fails to "identif[y] similarly situated . . . employees" outside of his protected class that received better treatment than him. *Mumin*, 760 F. Supp. 3d at 53; *see also De Souza*, 824 F. Supp. 3d at 374 ("The more liberal construction afforded to disparate-treatment claims under the NYCHRL and NYSHRL, however, does not cure [the] failure to identify a similarly-situated comparator." (cleaned up)); *Motayne v. Specialty Food Ass'n, Inc.*, 85 Misc. 3d 1204(A), 225 N.Y.S.3d 918 (N.Y. Sup. Ct. 2025) (dismissing NYSHRL and NYCHRL claims where plaintiff did not identify "a single . . . individual . . . who was similarly situated—in terms of role, job responsibilities, and working conditions—but received better" treatment).

Plaintiff argues that his allegation that Defendants granted medical exemptions while denying religious ones was sufficient to establish disparate treatment. Opp'n at 9 (citing Compl., ¶¶ 68, 75). Yet a policy that makes distinctions based upon medical conditions does not constitute evidence of religious-based animus. His claim for disparate treatment under the NYSHRL and NYCHRL is therefore dismissed.

**b. Failure to Accommodate**

Under the NYSHRL and the NYCHRL, "it is an unlawful employment practice for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 242 (S.D.N.Y. 2021) (cleaned up). To make out a *prima facie* case of a failure to accommodate under the NYSHRL and the NYCHRL, Plaintiff must allege that "(1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of his belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 513 (S.D.N.Y. 2023) (as applied to Title VII and NYCHRL), *aff'd sub nom. Algarin v. New York City Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); *Chinchilla v. New York City Police Dep't*, No. 23-CV-08986 (DEH), 2024 WL 3400526, at *7 (S.D.N.Y. July 12, 2024) (*Algarin* standard applies to NYSHRL as well as NYCHRL).

Plaintiff's Complaint clearly alleges that Plaintiff holds a bona fide belief, based upon his Christian faith, that he must keep his body sacred from all outside influences, including that of vaccines, and that taking the COVID-19 vaccine would violate this belief. Compl., ¶¶ 35, 38. He further alleges that he informed his employer of these beliefs through his accommodation request. *Id.*

Defendants rely on *Marte v. Montefiore Medical Center* to support their argument that Plaintiff's "generic statements" regarding his religious belief do not

establish a connection between his faith and his objections to the vaccine. *See* Mem. at 16-17. Yet in *Marte*, the plaintiff did not "inform[] Defendant that her opposition to the vaccine was because of her bona fide religious belief." No. 22-CV-03491 (CM), 2022 WL 7059182, at *6 (S.D.N.Y. Oct. 12, 2022). That is not the case here.

To the extent that Defendants attempt to challenge the sincerity of Plaintiff's religious belief, "evaluating the sincerity of a religious belief is a factual question—and questions of fact are unsuited to resolution on a motion to dismiss, where all factual allegations must be accepted." *Chinchilla*, 2024 WL 3400526, at *8 (collecting cases).

This leaves only the question of whether Plaintiff was disciplined for failure to comply with the Vaccine Mandate. Allegations of "constructive discharge" are sufficient to meet the third prong of this test. *See Annicelli*, 2026 WL 871393, at *12. "In some circumstances, an employee's decision to resign from his job may not be a free and voluntary choice." *Morris v. Schroder Cap. Mgmt. Int'l*, 859 N.E.2d 503, 507 (N.Y. 2006). "Constructive discharge occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Id.* (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)). This threshold is met when a trier of fact is "satisfied that the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (cleaned up).

Plaintiff's position is substantially similar to that of the plaintiff in *Annicelli*,

who was "facing strict time limits in terms of applying for a vested separation—requiring a 30-day notice and allowing for rescission of the application if his appeal was successful—or facing ultimate termination within seven days after the appeal was denied." 2026 WL 871393, at *13. There, the district court determined that it was "plausible that Plaintiff felt he had no choice but to commence the retirement process to maximize his post-employment benefits." *Id.*; *see also Chinchilla*, 2024 WL 3400526, at *8 (NYPD employee met third prong of failure to accommodate claim when she alleged that she was told she would be placed on leave without pay and eventually terminated if she did not receive vaccination, so to preserve her pension, she resigned after using her accrued leave time).

Here, Plaintiff alleges that he "began to exhaust his accruals" and "put in his retirement paperwork in or around June 3, 2022, understanding that the NYPD would not grant his accommodation request." Compl., ¶¶ 53-54. Plaintiff further alleges that his accommodation request was denied, and had he not already been running his time to vested separation, he would have been placed on leave without pay and then terminated. Compl., ¶¶ 55-56. Plaintiff has therefore sufficiently pleaded a failure to accommodate claim against the City of New York under the NYSHRL and NYCHRL.

With respect to Plaintiff's claims against the Individual Defendants, the NYSHRL permits individual liability where the individual defendant is considered an "employer." N.Y. Exec. Law. § 296(1); *see also DeSouza*, 824 F. Supp. 3d at 371. "An individual qualifies as an employer when that individual has an ownership

interest in the relevant organization or the power to do more than carry out personnel decisions made by others," *Townsend v. Benjamin Enter., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (cleaned up), such as those who have supervisory responsibility, *DeSouza*, 824 F. Supp. 3d at 372. The NYCHRL has a broader standard for individual liability, permitting claims to be brought "regardless of ownership or decisionmaking power." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).

Under either statute, however, a supervisor must have personal involvement by actually participating in the conduct giving rise to the claim of discrimination in order to be held personally liable. *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) (NYSHRL); *Malena*, 886 F. Supp. 2d at 366 (NYCHRL). The Complaint does not allege any personal involvement by Varma or former Mayors de Blasio and Adams with respect to the denial of Plaintiff's religious accommodation request. The reasonable accommodation claims are therefore dismissed as to those defendants.

Plaintiff does allege that Meisenholder, in her capacity as Deputy Commissioner of Equity and Inclusion, headed the division responsible for handling accommodation requests, Compl., ¶ 11, and was responsible for directing the denial of his accommodation request, *id.*, ¶¶ 42, 44. The reasonable accommodation claims against Defendant Meisenholder therefore survive.

**c. Hostile Work Environment Claim Under NYSHRL**

Plaintiff claims that Defendants "engaged in an unlawful discriminatory

practice by creating a hostile work environment" based on his religion. Compl., ¶ 148. To maintain a hostile work environment claim under the NYSHRL, Plaintiff must "establish both objective and subjective elements." *Booth v. New York Presbyterian Hospital-Behavioral Health Center*, No. 22-CV-10114 (NSR), 2024 WL 1381310, at *5 (S.D.N.Y. Mar. 29, 2024) (quoting *Moll v. Telesector Resources Group, Inc.*, 94 F.4th 218, 228-229 (2d Cir. 2024)). The objective element requires that "a reasonable person must find the misconduct severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* (cleaned up). The subjective element requires that Plaintiff "subjectively perceive the environment to be abusive." *Id.*

Turning to the objective element, Plaintiff clearly fails to allege facts sufficient to support a claim for hostile work environment. "Whether an environment is objectively hostile or abusive can be determined only by looking at *all* the circumstances." *Moll*, 94 F.4th at 229 (cleaned up). Factors courts consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted).

Here, as in *Booth*, "the frequency of the alleged discriminatory conduct is meager." *Booth*, 2024 WL 1381310, at *5. Plaintiff alleges only one instance, after the denial of his appeal, where Defendants "inform[ed] him" via email "that [they] were offering vaccines for free." Compl., ¶ 55.

The alleged misconduct's severity is also negligible. The Vaccine Mandate required all "City employees . . . to receive COVID-19 vaccinations," without regard to religious belief. Compl., ¶ 24. Furthermore, Plaintiff asserts that Defendant Meisenholder made statements on a podcast "about 'knuckle draggers' . . . as a derogatory term towards male police officers of faith." Compl., ¶ 43. Being that these statements were not directed towards Plaintiff and were made on a podcast, they are not severe or pervasive enough to create a hostile work environment.

Finally, Plaintiff fails to allege that religious animus animated the adoption of the Vaccine Mandate or any of the other conduct that purportedly made his work environment hostile. *See Nanakumo v. New York City Health & Hosps. Corp.*, No. 23-CV-00314 (ALC), 2025 WL 919479, at *7 (S.D.N.Y. Mar. 26, 2025) ("Plaintiff's allegations relate to the imposition of the vaccine mandate and, even when liberally construed, do not reflect any religious animus."). Accordingly, Plaintiff's hostile work environment claim under the NYSHRL is dismissed.

**d. Interference Under NYCHRL**

Plaintiff also asserts an interference claim under the NYCHRL. Compl., ¶¶ 169-171. It is unlawful "to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected" under the NYCHRL. N.Y.C. Admin. Code § 8-107(19). A threat is "required to state a claim for violation of" Section 8-107(19). *Roelcke v. Zip Aviation, LLC*, No. 15-CV-06284, 2018 WL 1792374, at *9 (S.D.N.Y. Mar. 26, 2018). "A threat is the creation of an impression of impending injury." *Shindé v. Chamber Music America, Inc.*, No. 23-

CV-02554, 2025 WL 1042284, at *11 (S.D.N.Y. Feb. 25, 2025) (citation omitted). But the threatened injury cannot be coextensive with the adverse employment action itself. *Id.*

Plaintiff contends that "Defendants threatened termination if he did not comply with the mandate, forcing his retirement." Opp'n at 11. Thus, the only threat Plaintiff allegedly received forms the basis of his constructive discharge claim, the adverse employment action at issue. His interference claim must therefore be dismissed.

**e. Failure to Engage in Cooperative Dialogue Under NYCHRL**

Plaintiff also claims that Defendants failed to engage in a cooperative dialogue about his accommodation request under the NYCHRL. Compl., ¶¶ 172-174. The NYCHRL provides that it "shall be an unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation . . . [f]or religious needs . . . ." N.Y.C. Admin. Code § 8-107(28)(a). The cooperative dialogue must include "good faith . . . written or oral dialogue concerning the person's accommodation needs, potential accommodations that may address those needs, and the difficulties that such accommodations may pose for the covered entity." *Chinchilla*, 2024 WL 3400526, at *12 (quoting *Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 62 (N.Y. App. Div. 2020)). "A failure to engage in cooperative dialogue regarding an accommodation gives rise to an independent

cause of action, irrespective of any failure to accommodate claim." *Id.* (citation omitted).

"The City's process for employees to seek an exemption from the Vaccine Mandate and obtain an accommodation satisfied the 'cooperative dialogue' requirement." *Annicelli*, 2026 WL 871393 at *14. Specifically, the NYPD's process in this case was sufficient under the NYCHRL in that it "informed employees about how to apply to their agency's Equal Employment Opportunity office and how to appeal denials[,] Petitioner availed himself of this process, the NYPD explained why his application did not qualify for an accommodation, and the parties further engaged during the administrative appeals process." *Marstellar v. City of New York,* 192 N.Y.S.3d 18, 20 (1st Dep't 2023); *see also Lynch v. Board of Educ. of City School District of New York*, 198 N.Y.S. 3d 78, 79 (1st Dep't 2023) (holding that respondent engaged in cooperative dialogue where "DOE employees were informed how to apply for religious accommodations and appeal denials, petitioner availed herself of this process, the DOE explained why her application did not qualify for an accommodation, [and] the parties further engaged in the administrative appeals process" (cleaned up)); *accord Chinchilla*, 2024 WL 3400526 at *12.

In the instant case, Plaintiff submitted his accommodation request to the NYPD office of Equal Employment Opportunity, Compl., ¶ 28, was given a reason for the denial of his accommodation request, Compl., ¶ 44, and availed himself of the appeal process after his denial, Compl., ¶ 50. Accordingly, Plaintiff's cooperative dialogue claim is dismissed.

**f. Retaliation Claims**

Plaintiff's retaliation claims fare no better. To maintain a retaliation claim under the NYSHRL, Plaintiff must show that "(1) . . . []he participated in a protected activity; (2) the defendant knew of the protected activity; (3) []he suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Booth*, 2024 WL 1381310, at *4. "A protected activity is any action taken to protest or oppose statutorily prohibited discrimination." *Id.* at *5 (cleaned up).

Plaintiff points to his accommodation request as his protected activity. Opp'n at 10. Yet "under the NYSHRL . . . a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim." *De Souza*, 824 F. Supp. 3d at 375; *see also Guerrero v. Constellation Health Serv., LLC*, No. 22-CV-07736 (OEM) (LGD), 2025 WL 2549936, at *15 (E.D.N.Y. Sept. 4, 2025). Accordingly, Plaintiff fails to state a claim for retaliation under the NYSHRL.

The NYCHRL has a broader liability standard than its state counterpart. *DeSouza*, 824 F. Supp. 3d at 375. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted). Additionally, "requesting a reasonable accommodation is a protected activity under the NYCHRL." *Piligian v. Icahn School of Medicine at Mt. Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020).

Yet the allegations in the Complaint disprove any causal connection between Plaintiff's accommodation request and his constructive discharge. "Courts have consistently held that plaintiffs cannot establish but-for causation where they are terminated pursuant to a policy that pre-dates any protected activity." *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 325 (S.D.N.Y. 2024). In this case, Plaintiff was notified of his pending termination and LWOP status as a result of the Vaccine Mandate, which was announced on October 20, 2021. The Vaccine Mandate necessarily predated his request for a religious accommodation. "When an employer establishes a vaccine requirement and an employee fails to comply, the employee's termination follows ineluctably from the policy regardless of whether the employee requests a religious accommodation." *Id.* (cleaned up); *cf. Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 171 (2d Cir. 2024) (no "plausibl[e] . . . connection between [the plaintiff's] invocations of the ADA and his termination" where "allegations in the Complaint make clear that he was fired because of his failure to comply with the company-wide vaccine policy" and "th[at] policy applied to all employees regardless of whether they had engaged in protected activity[.]").

The Complaint makes plain that Plaintiff was threatened with termination because he did not comply with the vaccine mandate. *See* Compl., ¶ 57. "In other words, even if [Plaintiff] had not submitted the exemption application at all, []he still would have been terminated based on h[is] failure to get vaccinated." *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-09739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023). Accordingly, he has failed to state a claim for retaliation.

**g. Aiding and Abetting**

Plaintiff asserts aiding and abetting claims under the NYSHRL and NYCHRL against individual Defendants Meisenholder, Varma, de Blasio, and Adams. Compl., ¶¶ 150-153, 165-168. A claim for aiding and abetting "is susceptible to the same standard" under both the NYSHRL and NYCHRL, "as [the] language of the two laws is virtually identical." *Xiang v. Eagle Enterprises, LLC*, No. 19-CV-1752, 2020 WL 248941, at *7 (S.D.N.Y. Jan. 16, 2020); *see also Feingold*, 366 F.3d at 158.

Yet "liability must be found as to the employer before an individual employee can be liable." *Xiang*, 2020 WL 248941, at *7. Because Plaintiff's only remaining state law claim is his failure to accommodate claim against the City and Defendant Meisenholder, the Court limits its consideration to whether Plaintiff has sufficiently alleged that any Individual Defendant can be held liable for aiding and abetting the denial of his accommodation request. As with direct personal liability, "to state a claim for aiding and abetting unlawful discrimination or retaliation, a plaintiff must plead that the defendant actually participated in the unlawful conduct of the principal actor." *Nezaj v. PS450 Bar and Restaurant*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024). As only Defendant Meisenholder is alleged to have participated in the denial of Plaintiff's accommodation request, the other aiding-and-abetting claims are dismissed.

## CONCLUSION

Accordingly, the Motion to Dismiss is **DENIED** with respect to Plaintiff's failure to accommodate claims under the NYSHRL and NYCHRL against the City of New York and Meisenholder, and with respect to the aiding-and-abetting claims against Meisenholder, and **GRANTED** in all other respects. The Clerk of Court is directed to terminate ECF No. 20.

By **September 21, 2026**, the parties shall file a joint letter setting forth the parties' proposals for next steps in this case.

SO ORDERED.

Dated: September 14, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge